UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
MAYKOR CASTILLO, on behalf of      :    15 Civ. 0527 (LGS) (JCF)
himself and all others similarly   :
situated,                          :              REPORT AND
                                   :              RECOMMENDATION
             Plaintiff,            :
                                   :
     - against -                   :
                                   :
RV TRANSPORT, INC. and RINGO       :
VALENZUELA,                        :
                                   :
             Defendants.           :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE LORNA G. SCHOFIELD, U.S.D.J.:

Named plaintiff Maykor Castillo and opt-in plaintiffs Hector Felix and Luis Villanueva allege that defendants RV Transport, Inc., and its owner Ringo Valenzuela violated the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (the "FLSA") and New York Labor Law and its implementing regulations ("NYLL"). The Honorable Lorna G. Schofield granted judgment by default against the defendants and referred the case to me for the calculation of damages. The defendants failed to appear at the hearing scheduled for November 10, 2015. The following findings are therefore based on information presented by the plaintiffs, including testimony taken by declaration. I recommend awarding the plaintiffs damages in the amount of $568,380.10 plus appropriate pre-judgment interest. In addition, the plaintiffs should be granted attorneys' fees and costs in the amount of $17,271.10.

Background

Each of the plaintiffs worked for RV Transport, a merchandise delivery service operating out of the Bronx that was owned and

1

managed by Mr. Valenzuela. (Declaration of Maykor Castillo dated Oct. 13, 2015 ("Castillo Decl."), ¶¶ 2-4; Declaration of Luis Villanueva dated October 10, 2015 ("Villanueva Decl."),[1] ¶¶ 2-3; Declaration of Hector Felix dated Oct. 15, 2015 ("Felix Decl."), ¶¶ 2-3). Mr. Castillo worked as an inventory clerk, Mr. Villanueva as a delivery person, and Mr. Felix as a "'helper,' aiding drivers on delivery routes." (Castillo Decl., ¶ 4; Villanueva Decl., ¶3; Felix Decl., ¶ 3). Each of the plaintiffs asserts that, notwithstanding the defendants' knowledge of their obligation to pay for any hours worked above 40 per week at one and one-half times each plaintiffs' regular rate of pay, the defendants "failed to pay [them] at any rate of pay, let alone at the statutorily-required overtime or minimum wage rates of pay, for each hour that [they] worked per week in excess of forty hours," and "wilfully failed to provide [them] with proper wage statements" on their date of hire or on any subsequent payday. (Castillo Decl., ¶¶ 4, 6, 23; Villanueva Decl., ¶¶ 3-4, 12; Felix Decl., ¶¶ 3-4, 13). Mr. Castillo states that "for some periods of time" during his employment, the defendants failed to pay him the required minimum wage for his first forty hours worked; they further failed to pay him "the statutorily required spread of hours premium for each day worked where [his] spread of hours exceeded ten hours while [he] was earning below the minimum wage for all hours worked."

---

[1] According to the plaintiffs, although the Villanueva Declaration is dated October 10, 2015, it was executed on October 14, 2015. (Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Damages, Pre-Judgment and Post-Judgment Interest, Attorneys' Fees, and Costs ("Pl. Memo.") at 2 n.1).

(Castillo Decl., ¶ 5).

Mr. Castillo alleges that he worked for RV Transport from May 13, 2012 until May 18, 2014.[2]  (Castillo Decl., ¶ 7).  From May 13, 2012, until the end of February 2013, Mr. Castillo worked 70 hours per week; from March 1, 2013, until the end of December 2013, he worked 80 hours per week; from January 1, 2014, until May 18, 2014, he worked 90 hours per week.  (Castillo Decl., ¶¶ 9-11; Pl. Memo. at 5-6).  He was paid $250.00 per week until June 22, 2012; from June 23, 2012, until August 23, 2012, he was paid $300.00 per week; from August 24, 2012, until August 30, 2013, he was paid $400.00 per week; from August 31, 2013, until September 30, 2013, he was paid $450.00 per week; and from October 1, 2013, until May 18, 2014, he was paid $400.00 per week.  (Castillo Decl., ¶¶ 13-17).  These amounts were intended to compensate him for the first 40 hours worked per week.[3]  (Castillo Decl., ¶¶ 13-17).

Mr. Felix alleges that he worked for RV Transport from September 12, 2013, until November 15, 2013, and then again from December 5, 2013, until March 27, 2014.  (Felix Decl., ¶ 5).  Each week he worked 90 hours and was paid $600.00, which was intended to cover the first 40 hours of work, a wage of $15.00 per hour.  (Felix Decl., ¶¶ 6-7).

---

[2] At one point, the plaintiffs seem to claim that Mr. Castillo began to work for the defendants in March 2012; at another, they list his start date as May 3, 2012.  (Pl. Memo. at 5; Castillo Decl., ¶ 7).  I shall use May 13, 2012 -- the latest of the asserted dates -- as the date he commenced his employment with RV Transport.

[3] A chart showing the number of hours Mr. Castillo worked and his wages over the course of his employment is included below.

Mr. Villanueva alleges that he worked for RV Transport from July 1, 2011, until July 31, 2014.  (Villanueva Decl., ¶ 5). During this period, he worked 84 hours per week and was compensated at $400.00 per week, an amount intended to cover his first 40 hours of work.  (Villanueva Decl., ¶ 7; Letter of H. Joseph Cronin dated Nov. 13, 2015 ("Cronin 11/13/15 Letter") at 1-2).  Thus, his hourly wage for his entire tenure with RV Transport was $10.00 per hour.

Mr. Castillo filed this action on January 23, 2015.  On February 10, 2015, Mr. Felix filed a form consenting to join this putative collective action; Mr. Villanueva filed his consent form on February 27, 2015.  Judge Schofield entered judgment by default against both defendants on August 17, 2015.

Discussion

A.  Liability

Where a defendant has defaulted, all of the facts alleged in the complaint, except those relating to the amount of damages, must be accepted as true.  See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997); Keystone Global LLC v. Auto Essentials, Inc., 12 Civ. 9077, 2015 WL 224359, at *3 (S.D.N.Y. Jan. 16, 2015).  The court may also rely on factual allegations pertaining to liability contained in affidavits and declarations submitted by the plaintiffs.  See, e.g., Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993).  Nonetheless, a court "must still satisfy itself that the plaintiff has established a sound legal basis upon which liability may be imposed." Jemine v. Dennis, 901 F. Supp. 2d 365, 373 (E.D.N.Y.

4

2012).   Once liability has been established, the plaintiff must provide evidence establishing the amount of damages with reasonable certainty.   Transatlantic Marine Claims Agency, 109 F.3d at 111.

Here, the allegations contained in the plaintiffs' submissions establish the defendants' liability.   The complaint alleges that RV Transport engaged in interstate commerce and had "qualifying annual business exceed[ing] $500,000" and that Mr. Valenzuela, as owner and manager of RV Transport, was responsible for its day-to-day operations, including hiring, firing, and paying employees. (Complaint, ¶¶ 11-12).   RV Transport is therefore an "enterprise engaged in commerce" and qualifies as a covered employer under the FLSA.[4]   29 U.S.C. §§ 203(r)(1), 203(s)(1)(A)(i)-(ii).   Mr. Valenzuela qualifies as an employer by virtue of his control over RV Transport's operations. 29 U.S.C. § 203(d); Herman v. RSR Security Services Ltd., 172 F.3d 132, 139 (2d Cir. 1999) ("[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question with an eye to the 'economic reality' presented by the facts of each case." (internal citation omitted)); Sethi v. Narod, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013) ("District courts in this Circuit 'have interpreted the definition of "employer" under the [NYLL] coextensively with the definition used by the FLSA.'" (quoting Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010))).   Each of the plaintiffs alleges that he was an employee of RV Transport.

---

[4] NYLL does not require that an employer be engaged in interstate commerce or meet thresholds of minimum annual sales. NYLL § 651(6).

(Complaint, ¶ 9; Castillo Decl., ¶ 4; Felix Decl., ¶ 3; Villanueva Decl., ¶3). Thus, the prerequisites for coverage under both the FLSA and NYLL are met.

Both state and federal law mandate that employees be paid at least a minimum hourly rate. 29 U.S.C. § 206(a)(1); N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12, § 146-1.2. During the period of the plaintiffs' employment with the defendants, the minimum hourly wage they were required to receive under the FLSA was $7.25. 29 U.S.C. § 206(a)(1). The New York minimum wage rate was $7.25 per hour until December 31, 2013; $8.00 per hour until December 31, 2014; and $8.75 per hour thereafter. 12 NYCRR § 142-2.1. In addition, under both the FLSA and NYLL, an employee must be compensated at a rate of at least one and one-half times his regular hourly rate for every hour worked in excess of 40 hours per week. 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.107; 12 NYCRR §§ 142-2.2, 142-2.16. Each of the plaintiffs has alleged the hours he worked and his rate of pay, and that he was paid less than the minimum wage, less than the required overtime rate, or both. (Complaint, ¶¶ 35-42; Castillo Decl., ¶¶ 7-18; Felix Decl., ¶¶ 5-8; Villanueva Decl., ¶¶ 5-8; Pl. Memo. at 5-6, 9-11; Cronen 11/13/15 Letter at 2). Moreover, Mr. Castillo asserts that the defendants failed to pay "spread of hours" premiums (Castillo Decl., ¶ 5), which comprise an extra "one hour's pay at the basic minimum hourly wage rate" for any day on which an employee works more than ten

hours.[5]  12 NYCRR § 142-2.4(a).  "An affidavit that sets forth the number of hours worked is sufficient" to carry the plaintiff's initial burden of recalling uncompensated hours worked.  <u>Angamarca v. Pita Grill 7 Inc.</u>, No. 11 Civ. 7777, 2012 WL 3578781, at *3 (S.D.N.Y. Aug. 2, 2012) (noting that in default cases, even approximations by plaintiff are given credit and used to determine damages).  Where the defendant does not rebut a plaintiff's recollection of hours worked, that estimate is presumed to be correct.  <u>Yang v. ACBL Corp.</u>, 427 F. Supp. 2d 327, 337 (S.D.N.Y. 2005).

    B.   <u>Damages</u>

       1.   <u>Willfulness</u>

A determination that an employer's underpayments were willful extends the statute of limitations under the FLSA from two to three years pursuant to 29 U.S.C. § 255(a).  Under the FLSA, an employer's conduct is considered "willful" if the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited."  <u>Herman</u>, 172 F.3d at 141 (quoting <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 133 (1988)); <u>accord</u> <u>Gurung v. Malhotra</u>, 851 F. Supp. 2d 583, 591 (S.D.N.Y. 2012).  Here, because the plaintiffs assert that the defendants knew of

---

[5] Spread of hours pay is required only for minimum wage employees and those who work in "restaurants and all-year hotels."  <u>See</u> <u>Guang Min Lin v. Benihana New York Corp.</u>, No. 10 Civ. 1335, 2012 WL 7620734, at *2 (S.D.N.Y. Oct. 23, 2012), <u>report and recommendation adopted</u>, 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013).  Mr. Castillo claims spread of hours pay only for the period in which his hourly wage was less than New York's minimum wage.  (Castillo Decl., ¶ 5; Pl. Memo. at 10).

their obligations under the law (Castillo Decl., ¶¶ 23-24; Felix Decl., ¶¶ 13-14; Villanueva Decl., ¶¶ 12-13), the defendants' default constitutes not only an admission of liability, but also of willfulness. See Gurung, 851 F. Supp. 2d at 591; Jin M. Cao v. Wu Liang Ye Lexington Restaurant, Inc., No. 08 Civ. 3725, 2010 WL 4159391, at *6 (S.D.N.Y. Sept. 30, 2010).

2.   Statute of Limitations

The statute of limitations under NYLL is six years, NYLL § 198(3), and the statute of limitations for willful violations of the FLSA is three years, 29 U.S.C. § 255(a).  Mr. Castillo began working at RV Transport on May 13, 2012, and filed his complaint on January 23, 2015.  He therefore can collect damages for violations of the FLSA and NYLL for his entire period of employment with the company.

For opt-in plaintiffs, the FLSA limitations period is measured from the time that the plaintiff joins the putative collective action.  See, e.g., Ji Li v. Ichiro Restaurant, Inc., No. 14 Civ. 10242, 2015 WL 6828056, at *6 (S.D.N.Y. Nov. 5, 2015) (noting that "the three-year statute of limitations period for willful FLSA violations runs for each individual plaintiff until that individual opts into the action").  Mr. Felix's employment with RV Transport began on September 12, 2013, fewer than three years prior to February 20, 2015, the date he filed his consent to join this action.  Therefore, he can collect damages for violations of the FLSA and NYLL for his entire period with the company.  Mr. Villanueva worked at RV Transport beginning on July 1, 2011; he

8

opted-in on February 27, 2015.  He can therefore recover under the
FLSA for violations occurring from February 27, 2012, until he
ended his employment on July 31, 2014; he can recover for
violations of NYLL for the prior period of his employment with RV
Transport.

       3.   <u>Actual Damages</u>

        a.  <u>Mr. Castillo</u>

The following chart records Mr. Castillo's hours worked and
weekly and hourly wage over the course of his employment.

| Time Period | Hours per Week | Weekly Wage | Hourly Rate |
|---|---|---|---|
| 5/13/12-6/22/12 | 70 | $250.00 | $6.25 |
| 6/23/12-8/23/12 | 70 | $300.00 | $7.50 |
| 8/24/12-2/28/13 | 70 | $400.00 | $10.00 |
| 3/1/13-8/30/13 | 80 | $400.00 | $10.00 |
| 8/31/13-9/30/13 | 80 | $450.00 | $11.25 |
| 10/1/13-12/31/13 | 80 | $400.00 | $10.00 |
| 1/1/14-5/18/14 | 90 | $400.00 | $10.00 |

During the first listed period of May 13, 2012, until June 22,
2012, a period of approximately six weeks, Mr. Castillo was paid
$6.25 per hour, which is $1.00 per hour less than the minimum wage
of $7.25 per hour required by both federal and state law.  29
U.S.C. § 206(a)(1); 12 NYCRR § 142-2.1.  This is the only period
for which there is a minimum wage violation.  Minimum wage damages
for this period amount to $240.00 (40 hours per week x 6 weeks x
$1.00 per hour).  For that same period, he is entitled to $1,958.40
in unpaid overtime ($7.25 per hour x 1.5 = $10.88 per hour; 30
hours per week overtime x 6 weeks = 180 hours; total unpaid

overtime = $1,958.40).

The period from June 23, 2012, until August 23, 2012, is approximately nine weeks.  Mr. Castillo is entitled to $3,037.50 in unpaid overtime for this period ($7.50 per hour x 1.5 = $11.25 per hour; 30 hours per week overtime x 9 weeks = 270 hours; total unpaid overtime = $3,037.50).

The period from August 24, 2012, until February 28, 2013, is approximately 27 weeks.  Mr. Castillo is entitled to $12,150.00 in unpaid overtime for this period ($10.00 per hour x 1.5 = $15.00 per hour; 30 hours per week overtime x 27 weeks = 810 hours; total unpaid overtime = $12,150.00).

The period from March 1, 2013, until August 30, 2013, is approximately 26 weeks.  Mr. Castillo is entitled to $15,600.00 in unpaid overtime for this period ($10.00 per hour x 1.5 = $15.00 per hour; 40 hours per week overtime x 26 weeks = 1,040 hours; total unpaid overtime = $15,600.00).

The period from August 31, 2013, until September 30, 2013, is approximately four weeks.  Mr. Castillo is entitled to $2,700.80 in unpaid overtime for this period ($11.25 per hour x 1.5 = $16.88 per hour; 40 hours per week overtime x 4 weeks = 160 hours; total unpaid overtime = $2,700.80).

The period from October 1, 2013, until December 31, 2013, is approximately 13 weeks.  Mr. Castillo is entitled to $7,800.00 in unpaid overtime for this period ($10.00 per hour x 1.5 = $15.00 per hour; 40 hours per week overtime x 13 weeks = 520 hours; total unpaid overtime = $7,800.00).

10

The period from January 1, 2014, until May 18, 2014, is approximately 20 weeks. Mr. Castillo is entitled to $15,000.00 in unpaid overtime for this period ($10.00 per hour x 1.5 = $15.00 per hour; 50 hours per week overtime x 20 weeks = 1,000 hours; total unpaid overtime = $15,000.00).

In addition, Mr. Castillo is entitled to NYLL's spread of hours premium for the six week period between May 13, 2012, and June 22, 2012, when he was paid less than the minimum wage but worked more than ten hours per day (his 70 hours per week was spread over five days (Complaint, ¶35; Castillo Decl., ¶ 9)). He is therefore entitled to an extra $7.25 per hour for each day he worked during this period, for a total of $217.50 (5 days per week x 6 weeks x $7.25 per day = $217.50). Mr. Castillo's total actual damages therefore amount to $58,704.20 ($240.00 + $1,958.40 + $3,037.50 + $12,150.00 + $15,600.00 + $2,700.80 + $7,800.00 + $15,000.00 + $217.50 = $58,704.20).

### b. Mr. Felix

Mr. Felix worked for RV Transport for two discontinuous periods: September 12, 2013, until November 15, 2013 -- a period of just over nine weeks -- and from December 5, 2015, until March 27, 2014 -- a period of just over 16 weeks -- for a total of approximately 25 weeks. Mr. Felix is entitled to $28,125.00 in unpaid overtime for these periods ($15.00 hour x 1.5 = $22.50 per hour; 50 hours overtime per week x 25 weeks = 1,250 hours; total unpaid overtime compensation = $28,125.00).

11

c.   <u>Mr. Villanueva</u>

Mr. Villanueva worked for RV Transport from July 1, 2011, until July 31, 2014. Because the statute of limitations for willful violations of the FLSA is three years, he may recover under that federal statute for violations occurring within three years of the date he joined this action, that is, for violations occurring between February 27, 2012, and July 31, 2014, a period of approximately 126 weeks; because the statute of limitations for willful violations of NYLL is six years, he may recover under that statute for violations from July 1, 2011 (the date he began his employment) until February 26, 2012, a period of approximately 34 weeks. (Mr. Felix does not claim that he should be compensated under both the NYLL and the FLSA for the same hours worked, and courts have held such double recovery prohibited, <u>see, e.g.</u>, <u>Cardoza v. Mango King Farmers Market Corp.</u>, No. 14 CV 3314, 2015 WL 5561033, at *6 (E.D.N.Y. Sept. 1, 2015) ("Because both the FLSA and NYLL are compensatory in nature, double recovery may result if damages are awarded for the same hours worked under both the federal and state law."), <u>report and recommendation adopted</u>, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015).) The calculation under the two statutes is identical here, however. Mr. Villanueva is entitled to $105,600.00 in unpaid overtime ($10.00 per hour x 1.5 = $15.00 per hour; 44 hours per week overtime x 160 weeks = 7,040 hours; total unpaid overtime compensation = $105,600.00).[6]

---

[6] This total comprises $83,160.00 under the FLSA and $22,440.00 under NYLL.

    4.   Liquidated Damages

Both the FLSA and NYLL provide for liquidated damages.  An employer who violates overtime provisions of the FLSA is liable for an amount in liquidated damages equal to the amount owed in compensatory damages.  29 U.S.C. § 216(b); Smith v. Nagai, No. 10 Civ. 8237, 2012 WL 2421740, at *4 (S.D.N.Y. May 15, 2012) ("A defendant found to have violated the FLSA is required to pay the employee an additional amount in liquidated damages equal to the unpaid overtime."), report and recommendation adopted sub nom. Smith v. Saki Restaurant Corp., 2012 WL 2428929 (S.D.N.Y. June 27, 2012).

Under NYLL, a prevailing employee is entitled to liquidated damages in the amount of one hundred percent of unpaid overtime accrued after April 9, 2011.  NYLL §§ 198(1-a), 663(1); see Garcia v. Giorgio's Brick Oven & Wine Bar, No. 11 Civ. 4689, 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012) ("Effective April 9, 2011, Sections 198(1-a) and 663(1) of the NYLL were amended to provide for liquidated damages equal to one-hundred percent of the amounts underpaid."), report and recommendation adopted, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012).

District courts in this circuit have disagreed over whether a plaintiff may obtain liquidated damages for the same violations under both the FLSA and NYLL.  Guadalupe v. Tri-State Employment, Management & Consulting, Inc., No. 10 CV 3840, 2013 WL 4547242, at *14 (E.D.N.Y. Aug. 28, 2013) (noting disagreement over whether liquidated damages under FLSA and NYLL serve similar or different

13

purposes); Anqamarca, 2012 WL 3578781, at *8 (collecting cases).
Courts holding that liquidated damages may be simultaneously
collected under both statutes point to the "fundamentally different
purposes" of the liquidated damages provisions in the FLSA and
NYLL: "Under the FLSA, liquidated damages are compensatory, rather
than punitive.  In contrast, liquidated damages under [NYLL] are
punitive 'to deter an employer's willful withholding of wages
due.'" Jin M. Cao, 2010 WL 4159391, at *5 (internal citation
omitted) (quoting Reilly v. NatWest Markets Group Inc., 181 F.3d
253, 265 (2d Cir. 1999)); see also Gunawan v. Sake Sushi
Restaurant, 897 F. Supp. 2d 76, 91 (E.D.N.Y. 2012) ("I am persuaded
that the two statutory provisions serve difference purposes and are
therefore not mutually exclusive."); Yu G. Ke v. Saigon Grill,
Inc., 595 F. Supp. 2d 240, 261-62 (S.D.N.Y. 2008) (liquidated
damages under the FLSA compensate for delay in receiving wages and
"serve as a form of pre-judgment interest," while "the liquidated
damages provided for in [NYLL] are punitive in nature"); compare
Herman, 172 F.3d at 142 (liquidated damages under FLSA are "not a
penalty exacted by the law, but rather compensation to the employee
occasioned by the delay in receiving wages due caused by the
employer's violation of the FLSA"), with Carter v. Frito-Lay, Inc.,
74 A.D. 2d 550, 551, 425 N.Y.S.2d 115, 116-17 (1st Dep't 1980)
(stating, "It is clear that liquidated damages as provided in
[NYLL] . . . constitute a penalty," and citing Governor's message
accompanying legislation referring to deterrent effect of
provision).

14

The notion that the state and federal laws serve different purposes is buttressed by the facts that (1) prior to November 2009, liquidated damages under NYLL, but not under the FLSA, required a finding of willfulness, see Inclan v. New York Hospitality Group, Inc., 95 F. Supp. 3d 490, 506 (S.D.N.Y. 2015); see also 2009 N.Y. Sess. Laws ch. 372, amending NYLL §§ 198(1-a), 663(1); and (2) prior to April 2011, the two statutes provided for "different levels of relief" -- under NYLL, liquidated damages were 25% of unpaid wages, while under the FLSA, they were measured at 100% of unpaid wages. Lopez v. Yossi's Heimishe Bakery, Inc., No. 13 CV 5050, 2015 WL 1469619, at *11 (E.D.N.Y. March 30, 2015); see also 2010 N.Y. Sess. Laws ch. 564, amending NYLL §§ 198(1-a), 663(1). Since the statute has been amended to "provide for essentially identical remedies with respect to liquidated damages," Gunawan, 897 F. Supp. 2d at 91 n.11, some courts have found it "more reasonable to conclude that the two statutes adopt the same remedies to achieve the same goals," Lopez, 2015 WL 1469619, at *11; see also Gonzalez v. Jane Roe Inc., No. 10 CV 1000, 2015 WL 4662490, at *5 n.11 (E.D.N.Y. July 15, 2015) ("Since . . . the amounts of liquidated damages are now identical under the NYLL and the FLSA, some courts have concluded that the distinction drawn between the purposes of the two statutes is no longer persuasive, and therefore, that cumulative liquidated damages are not available."); Inclan, 95 F. Supp. 3d at 506 (finding that because amendment effective in 2009 allowed liquidated damages without finding of willfulness, such damages should no longer be

characterized as penalty); <u>Gortat v. Capala Brothers</u>, 949 F. Supp. 2d 374, 381 & n.3 (E.D.N.Y. 2013) (rejecting distinction between purposes of FLSA and NYLL liquidated damages provisions as "semantic" and stating, "The liquidated damages provisions of the NYLL were amended in 2009 and 2010 and now track the FLSA. These amendments have resolved the disagreement among district courts" so that cumulative liquidated damages should no longer be available), <u>aff'd</u>, 568 F. App'x 78 (2d Cir. 2014).

I decline, at this juncture, to alter what had become the "majority view" under the former iteration of the statute that cumulative liquidated damages are available. <u>Berrezueta v. Royal Crown Pastry Shop, Inc.</u>, No. 12 CV 4380, 2013 WL 6579799, at *6 (E.D.N.Y. Dec. 16, 2013) (collecting cases). While amended NYLL now mirrors the FLSA in its treatment of liquidated damages, the foundation for the notion that the two statutes serve different purposes -- that is, that liquidated damages under NYLL are punitive, unlike their FLSA counterparts -- has not been shaken. Indeed, the Sponsors Memorandum in support of the 2010 amendments (which increased liquidated damages from 25% to 100%) justifies the modifications by observing that "[t]he <u>penalties</u> in place for employers paying less than minimum wage are minimal and offer little deterrent -- this will change dramatically with this legislation. <u>Penalties</u> for violating employee rights would be increased in order to far better protect workers' rights and interests." N.Y. Spons. Memo., 2010 S.B. 8380, Leg. 233, Reg. Sess. (Oct. 28, 2010) (emphasis added). And, although amendments

16

effective in 2009 removed the requirement that a plaintiff prove
that violations were "willful" in order to merit liquidated
damages, instead providing the employer an opportunity to "prove[]
a good faith basis to believe that its underpayment of wages was in
compliance with the law," NYLL §§ 198(1-a), 663(1),  the Sponsors
Memorandum in support of those amendments says nothing about
altering the punitive purpose of the liquidated damages provision;
rather, it asserts that the amendment aims to remedy "the inherent
unfairness of requiring employees who have already proven they were
underpaid to further prove the underpayment was willful.   The
burden of explaining the basis of violations rightly rests with the
employer, rather than imposing the onerous burden on employees of
establishing their employer's state of mind."   N.Y. Spons. Memo.,
2009 A.B. 6963, Leg. 232, Reg. Sess. (April 8, 2009).   This
indicates that the 2009 amendments merely shifted the burden of
proving liquidated damages, not their purpose.   I therefore
recommend allowing the plaintiffs to recover liquidated damages
under both the FLSA and NYLL.

Mr. Castillo is entitled to an amount equal to his total
actual damages as liquidated damages under NYLL, that is
$58,704.20.  Because his award for the defendants' spread of hours
violation is a creature of state law, his liquidated damages under
the FLSA amount to $58,486.70 ($58,704.20 – $217.50 spread of hours
damages = $58,486.70).   Mr. Castillo is therefore entitled to
$117,190.90 in liquidated damages.  Mr. Felix is entitled to twice
his actual damages as liquidated damages under both statutes, that

17

is, $56,250.00.  Because of the statute of limitations issue, Mr.
Villanueva is entitled to $105,600.00 in liquidated damages under
NYLL.  Liquidated damages under the FLSA, however, may be awarded
only for the 126-week period from February 27, 2012, until July 31,
2014, for a total of $83,160.00 ($15.00 per hour x 44 overtime
hours per week x 126 weeks = $83,160.00).  Mr. Villanueva's total
liquidated damages award amounts to $188,760.00

> 5.  <u>Statutory Damages</u>

Statutory damages are available for an employer's failure to
provide a wage notice at the time of hiring and for his failure to
provide a wage statement with every payment of wages.

At the time of these violations, the failure to provide a wage
notice at the time of hire entitled a plaintiff to statutory
damages of $50.00 for each work week "that the violations occurred
or continue to occur," up to a total of $2,500.00.  NYLL § 198(1-b)
(as amended by 2010 N.Y. Sess. Laws ch. 564); <u>Inclan</u>, 95 F. Supp.
3d at 501 ("Prior to February 27, 2015, the WTPA allowed employees
to recover, as statutory damages for violations of this wage notice
requirement, $50 per work week, not to exceed $2,500."); <u>see also</u>
2014 N.Y. Sess. Laws ch. 537, <u>amending</u> NYLL § 198(1-b).[7]  Each
plaintiff asserts that he was never provided with the required wage
notice.  (Castillo Decl., ¶¶ 6, 21; Felix Decl., ¶¶ 4, 11;

---

[7]  The statutory provision providing for these damages was
amended as of February 27, 2015, to allow for an award of $50.00
per day up to a total of $5,000.00.  NYLL § 198(1-b).  The
plaintiffs do not appear to claim that this amendment applies here,
although they mistakenly assert that the earlier version of the
provision provided for daily, rather than weekly, compounding of
damages.  (Pl. Memo. at 17-18).

Villanueva Decl., ¶¶ 4, 11). Mr. Castillo and Mr. Villanueva each worked for RV Transport for more than 50 weeks, so each is entitled to the maximum $2,500.00 award. Mr. Felix worked for RV Transport for approximately 25 weeks, and is therefore entitled to an award of $1,250.00.

At the time of these violations, the failure to provide wage statements with each wage payment entitled a plaintiff to statutory damages in the amount of $100.00 for each work week that the violations occurred, up to a total of $2,500.00.[8]   NYLL §§ 195(1)(a), (3); 198(1-d) (as amended by 2010 N.Y. Sess. Laws ch. 564); Zhen Ming Chen v. New Fresco Tortillas Taco LLC, No. 15 Civ. 2158, 2015 WL 5710320, at *7 (S.D.N.Y. Sept. 25, 2015); see also 2014 N.Y. Sess. Laws ch. 537, amending NYLL § 198(1-d). Here, each of the plaintiffs was paid weekly, each asserts that he never received a wage statement, and each worked for RV Transport for a period of at least 25 weeks. (Castillo Decl., ¶¶ 6, 8, 20; Felix Decl., ¶¶ 4, 9, 11; Villanueva Decl., ¶¶ 4, 9, 11). Mr. Castillo, Mr. Felix, and Mr. Villanueave are therefore each entitled to the maximum statutory damages award of $2,500.00.

6.   Prejudgment Interest

Because liquidated damages under the FLSA compensate a plaintiff for the loss of the use of his (unpaid) wages,

---

[8] The statutory provision providing for these damages was amended as of February 27, 2015, to allow for an award of $250.00 per day up to $5,000.00. NYLL §198(1-d). The plaintiffs do not argue that this amendment applies in this case, although at one point they mistakenly assert that the earlier version of this provision provided for daily, rather than weekly, compounding of damages. (Pl. Memo. at 17).

prejudgment interest may not be awarded in addition to liquidated damages under that statute. See Brooklyn Savings Bank v. O'Neill, 324 U.S. 697, 715 (1945); Santillan v. Henao, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011) (citing Brock v. Superior Care, Inc., 840 F.2d 1054, 1064 (2d Cir. 1988)). The same is not true, however of NYLL, the purpose of which is punitive. See Gonzalez, 2015 WL 4662490, at *5. Therefore, Mr. Valenzuela may recover prejudgment interest on the $22,440.00 he should be awarded under NYLL ($15.00 per hour x 44 overtime hours per week x 34 weeks = $22,440.00).

State law sets the pre-judgment interest rate at 9% per year. N.Y. CPLR § 5001; see also Rosendo v. Everbrighten Inc., No. 13 Civ. 7256, 2015 WL 1600057, at *6-7 (S.D.N.Y. April 7, 2015). "When unpaid wages were incurred at various times, simple prejudgment interest is calculated from a singular, midpoint date through the date judgment is entered." Id. at *7 (quoting Gortat, 949 F. Supp. 2d at 386). The dates that Mr. Villanueva was covered only by NYLL and not by the FLSA are July 1, 2011, until February 26, 2012, a period of 241 days. The midpoint between these two dates is approximately October 29, 2011. Therefore, I recommend awarding Mr. Villanueva prejudgment interest at 9% per year on $22,440.00 from October 29, 2011 until entry of judgment. Daily interest on this amount is $5.52 (($22,400.00 x 9%) ÷ 365 days = $5.52 per day).

C.   Attorneys' Fees and Costs

As the prevailing parties in this FLSA and NYLL action, the plaintiffs are entitled to an award of attorneys' fees. 29 U.S.C.

20

§ 216(b); NYLL § 198(1-a).

"[T]he lodestar -- the product of a reasonable hourly rate and the reasonable number of hours required by the case -- creates a 'presumptively reasonable fee.'  While the lodestar is not always conclusive, its presumptive reasonability means that, absent extraordinary circumstances, failing to calculate it as a starting point is legal error." Millea v. Metro-North Railroad Co., 658 F.3d 154, 166 (2d Cir. 2011) (internal citations omitted) (quoting Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008)).  Counsel for the plaintiffs have submitted contemporaneous time records identifying each timekeeper and cataloguing his or her hourly rates, hours spent, and tasks. (Time Records, attached as Exh. K to Declaration of Michael J. Borrelli dated Oct. 15, 2015 ("Borrelli Decl.")); see also Scott v. City of New York, 626 F.3d 130, 133 (2d Cir. 2010) ("[A]bsent unusual circumstances attorneys are required to submit contemporaneous records with their fee applications.").

     1.   Reasonable Hourly Rate

Counsel for the plaintiffs provide background information for 12 timekeepers who worked on this case.[9]  Michael J. Borrelli is the founder and managing member of the law firm Borelli & Associates, PLLC. (Borrelli Decl., ¶ 35).  He is admitted to the bar of the State of New York and has been practicing law for approximately 13 years. (Borrelli Decl., ¶ 35).  Since the

---

[9] No information is provided for a thirteenth timekeeper, a receptionist, but, as I explain below, her time is not compensable.

inception of Borrelli & Associates in 2006, Mr. Borrelli and his firm have focused on actions brought by individual plaintiff-employees. (Borrelli Decl., ¶¶ 41, 44). His current rate is $500 per hour, but he is requesting $400 per hour for his work on this case. (Borrelli Decl., ¶¶ 49-50).

Alexander Todd Coleman is Senior Counsel at Borrelli & Associates. (Borrelli Decl., ¶ 51). He is a member of the bar of the State of New York and has practiced law since 2008, focusing since 2010 on employment discrimination and wage and hour litigation. (Borrelli Decl., ¶¶ 52, 55, 59). In his role as Senior Counsel, he supervises the work of all of the firm's associates. (Borrelli Decl., ¶ 61). His current rate is $400.00 per hour, but he is requesting $325.00 per hour for his work on this case, and one-half that rate, or $162.50 per hour, while travelling. (Borrelli Decl., ¶¶ 23, 63-64).

H. Joseph Cronen is a associate who graduated from law school in 2011 and joined Borrelli & Associates in 2015. (Borrelli Decl., ¶ 66). He worked primarily on the damages application in this case. (Borrelli Decl., ¶ 66). His typical rate is $300.00 per hour, but he is requesting $150.00 per hour for his work on this case. (Borrelli Decl., ¶¶ 67-68).

Mindy L. Kallus is a former associate with Borelli & Associates who graduated from law school in 1984 and has focused on labor and employment law since 2000. (Borrelli Decl., ¶ 69). Her typical rate was $400.00 per hour, but the requested rate for her work on this case is $250.00 per hour. (Borrelli Decl., ¶¶ 70-71).

Christopher J. Berlinger is a former associate with Borelli & Associates who graduated from law school in 2014. (Borrelli Decl., ¶ 72. His typical rate was $300.00 per hour, but the requested rate for his work on this case is $150.00 per hour. (Borrelli Decl., ¶¶ 73-74).

Jarissa Peralta, Luiggi Tapia, Kevin Guaranda, Isaura Collada, Rene Ortega, and Anglica Moreno are all paralegals currently or formerly employed by Borrelli & Associates. (Borrelli Decl., ¶¶ 75-79). The typical hourly rate for the firm's paralegals is $125.00, but the requested rate for work on this case is $100.00. (Borrelli Decl., ¶¶ 80-81). Melanie Lazarus is a law clerk whose requested rate is $125.00 per hour. (Borrelli Decl., ¶¶ 82-83).

Each requested rate is within the range of reasonable rates for an attorney of comparable experience or a paralegal. See, e.g., Gonzalez v. Scalinatella, Inc., __ F. Supp. 3d __, __, 2015 WL 3757069, at *20-22 (S.D.N.Y. 2015) (approving rates of $350.00 to 450.00 per hour for senior attorneys, $150.00 to $200.00 per hour for associates, and $100.00 per hour for paralegals); Patino v. Brady Parking, Inc., No. 11 Civ. 3080, 2015 WL 2069743, at *2-3 (S.D.N.Y. April 30, 2015) (approving $400.00 per hour for Mr. Borrelli, $325.00 per hour for Mr. Coleman, and $250.00 per hour for associates in wage and hour litigation).

### 2. Reasonable Hours Expended

The hours expended are a different matter altogether. Counsel for the plaintiffs has provided a chart showing that the firm expended a total of 182.7 hours on this case. (Borrelli Decl., ¶

23

23).[10]   Recognizing that this is an unreasonable number of hours to spend on an action in which the defendants never appeared and therefore defaulted, see, e.g., Castellanos v. Deli Casagrande Corp., No. 11 CV 245, 2013 WL 1207058, at *11 (E.D.N.Y. March 7, 2013) (finding unreasonable 31.2 hours billed by five associates and 18.2 hours billed by partner in single plaintiff FLSA/NYLL action "that went into early default," but ultimately approving 69.2 total hours with 10% deduction on total fee award), report and recommendation adopted, 2013 WL 1209311 (E.D.N.Y. March 25, 2013), Borrelli & Associates asserts that it "seek[s] recovery for less than all hours worked on the [] action, and only seeks recovery for 87.1 hours." (Pl. Memo. at 30).  However, the firm then claims a total fee award of $33,549.75, which is approximately the amount it would be due if all 182.7 hours were claimed.[11]  (Pl. Memo. at 31; Borrelli Decl., ¶ 23).  Moreover, the submissions do not indicate which hours from which timekeepers comprise the 87.1 hours claimed. Additionally, the firm appears to seek compensation for time spent by its receptionist reporting to an attorney regarding an apparently case-related voicemail message.  (Borrelli Decl., ¶ 23; Time Records at 8).  I find no support for the notion that such time is compensable.[12]

---

[10]  There is a mathematical error in the chart, as it erroneously reflects a total of 186.6 hours.

[11]  The actual total amount for all the hours expended by all the timekeepers is $33,569.75.

[12]  This is, admittedly, a minuscule charge of $3.50, but it is nevertheless unsupported.

Given these issues with the fee application, I recommend awarding a portion of the $33,569.75 requested. First, the receptionist's time should be subtracted to decrease the total to $33,566.25. The number of hours for which the firm claims it seeks reimbursement -- 87.1 -- is approximately 48% of 182.6 hours (that is, 182.7 hours - 0.1 hours expended by the receptionist). Decreasing the fees by the same proportion results in a more reasonable fee award of $16,111.80. Cf. Castellanos, 2013 WL 1207058, at *12 (awarding $14,089.50 in attorneys' fees).

   3.   Costs

Both the FLSA and NYLL require an award of costs to a prevailing party. 29 U.S.C. § 216(b); NYLL § 663(1). The plaintiffs have provided receipts for certain claimed costs, such as filing fees, service of process fees, and travel expenses, and plaintiffs' counsel has sworn that the expenses for which receipts are not provided, such as postage and PACER fees, were necessarily incurred in this litigation. (Borrelli Decl., ¶¶ 18-19; Borelli & Associates Statement, attached as Exh. I to Borrelli Decl.; Proof of Expenses, attached as Exh. J to Borrelli Decl.). I therefore recommend that the plaintiffs be awarded $1,159.30 in costs. See Castellanos v. Mod Bronx Community Housing Management Corp., No. 13 Civ. 3061, 2014 WL 2624759, at *8 (S.D.N.Y. June 10, 2014) (awarding reasonable costs that "counsel has sworn to incurring").

   D.   Penalty for Non-Payment

According to NYLL § 663(4):

Any judgment or court order awarding remedies under this
section shall provide that if any amounts remain unpaid

upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal therefrom is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent.

I recommend that the judgment include language that the amount of the judgment attributable to violations of NYLL, including prejudgment interest and attorneys' fees and costs shall increase by 15% if the conditions of the statute are met.

<u>Conclusion</u>

For the reasons set forth above, I recommend awarding plaintiffs damages in the following amounts: Maykor Castillo, $180,895.10 ($58,704.20 actual damages + $58,704.20 NYLL liquidated damages + $58,486.70 FLSA liquidated damages + $5,000.00 statutory damages = $180,895.10); Hector Felix, $88,125.00 ($28,125.00 actual damages + $28,125.00 NYLL liquidated damages + $28,125.00 FLSA liquidated damages + $3,750.00 statutory damages = $88,125.00); Luis Villanueva, $299,360.00 ($105,600.00 actual damages + $105,600.00 NYLL liquidated damages + $83,160.00 FLSA liquidated damages + $5,000.00 statutory damages = $299,360.00). In addition, prejudgment interest on Mr. Villanueva's award should accrue at a rate of $5.52 per day from October 29, 2011 until entry of judgment. I further recommend awarding attorneys' fees and costs in the amount of $17,271.10 ($16,111.80 attorneys' fees + 1,159.30 costs = $17,271.10).

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to

26

this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Lorna G. Schofield, Room 201, 40 Foley Square, New York, New York 10007, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       December 21, 2015

Copies transmitted this date to:

Michael J. Borelli, Esq.
Alexander T. Coleman, Esq.
H. Joseph Cronen, Esq.
Law Offices of Borelli & Associates
1010 Northern Blvd., Ste. 328
Great Neck, NY 11021

RV Transport, Inc.
1381 Shakespeare Ave.
Bronx, NY 10452

Ringo Valenzuela
874 E. 139th St.
Bronx, NY 10454